# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **LEXINGTON INSURANCE COMPANY,** | **Plaintiff,** |
| v. | No. 3:20-cv-330-BJB |
| **THE AMBASSADOR GROUP LLC, et al.** | **Defendants.** |

| | |
|---|---|
| **STATE NATIONAL INSURANCE COMPANY, INC., et al.** | **Plaintiff–Intervenors,** |
| v. | |
| **THE AMBASSADOR GROUP LLC, et al.** | **Defendants–Intervenors.** |

\*\*\*

## OPINION & ORDER

"A consent decree is a strange hybrid in the law." *Brown v. Neeb,* 644 F.2d 551, 557 (6th Cir. 1981). Indeed it is! Both "a voluntary settlement agreement which could be fully effective without judicial intervention" and "a final judicial order ... plac[ing] the power and prestige of the court behind the compromise struck by the parties." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir. 1983). In effect, a "settlement agreement subject to continued judicial policing." *Id.* But many types of judicial "intervention" and "policing" might be desirable, yet beyond the limited role the Constitution assigns to federal courts. *See, e.g.*, *Marbury v. Madison* 5 U.S. (1 Cranch) 137 (1803) (Court lacked authority to order delivery of tardy paperwork).

Even so, this strange hybrid enjoys a privileged—if perhaps untested—position among the ranks of permissible judicial remedies. Certainly the law of this circuit tolerates, and even favors, their use in order to speed the resolution of the cases and controversies on federal dockets. "[P]ublic policy," the court of appeals has noted, "generally supports a presumption in favor of voluntary settlement of litigation" through "a consent decree." *United States v. Lexington-Fayette Urban County Gov't*, 591 F.3d 484, 490–91 (6th Cir. 2010) (quotation omitted)). But once the parties reach agreement, would the underlying disputes even qualify as "Cases" and "Controversies" as used by the framers of Article III? And could justice proceed just

1

as swiftly based on private settlement agreements alone? These are important constitutional questions whose answers are not obvious. As a matter of precedent, however, caselaw demands that the Court enter the consent decree proposed in this case because it satisfies the prudential factors long set forth in Sixth Circuit decisions.

* * *

State National Insurance intervened in this trademark dispute to allege that the defendants, including ePremium, secretly forged State National's name and trademark on hundreds of counterfeit insurance policies and thousands of insurance certificates. *See* First Amended Intervenor Complaint (DN 47). State National sought an injunction under the Lanham Act and relief under a variety of state and federal laws. *Id.* ¶¶ 112, 128, 154, 165. Shortly thereafter, State National and ePremium jointly moved for a consent order (DN 54) to maintain the status quo during this litigation. The Court entered that order (DN 62) in October 2020. Now those two parties have reached a settlement contingent on the Court dismissing ePremium and permanently enjoining it from future infringement of State National's trademarks. *See* DN 130.

That strongly suggests State National and ePremium now agree on the appropriate resolution of their dispute—or at least they will if the Court enters the consent decree on which their settlement is conditioned. *See Williams*, 720 F.2d at 920.

In response to the parties' request, the Court asked why its public imprimatur and supervision are necessary in light of their private agreement. In other words, "[i]f the parties have already agreed they'll stop doing whatever causes the harm, why would they need the Court to order [the] 'extraordinary remedy'" of an injunction "merely to further solemnize an already enforceable contract?" *J.P. Morgan Secs. v. Kittell*, --- F. Supp. 3d ---, 2021 WL 5028976 (W.D. Ky. Aug. 16, 2021). The affected parties responded with a supplemental brief establishing that courts regularly enter such orders in trademark cases, DN 138, and with an oral representation that State National would have "additional comfort" resolving its claims if it knew the Court stood behind the agreement, DN 135 (telephonic hearing).

Stand behind what, exactly? The nature of the parties' request—no doubt welcome for its efficiency and amicability—puts a court in a somewhat uncomfortable position: the facts and law undergirding the agreement haven't been litigated, and the nature of the resolution hasn't been disclosed. A pig in a poke, to be sure, but one that clears the docket. Why wouldn't a busy judge just sign off? Two reasons come to mind—one jurisdictional and one remedial.

**1. Jurisdiction**. What is the ongoing adversity between ePremium and State National amounting to a live case or controversy within the meaning of the Constitution? "[J]urisdiction is always first." *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env'tl Quality*, 968 F.3d 419, 426 (5th Cir. 2020) (Oldham, J., concurring).

And in federal court, jurisdiction is always limited: the Constitution authorizes courts to hear only "Cases" or "Controversies," U.S. Const. Art. III § 2, which the Supreme Court has interpreted to require adversity that persists "at all stages of review," "not merely at the time the complaint is filed," *Arizonans for Official English*, 520 U.S. at 67. Even an earlier era—characterized by a laxer approach to Article III's limits—understood that the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973). And parties of course may not waive or concede federal jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

Based on the representations set forth in the proposed order, ePremium is not currently violating State National's trademarks. Proposed Order (DN 130-1) at 3. Ordinarily, "[s]ettlement of a plaintiff's claims moots an action." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (quotation omitted). A court's jurisdiction to enter an order dismissing a case in light of a settlement is clear enough: that "matte[r] of judicial administration" merely conforms the public docket to the private reality that a preexisting dispute no longer exists. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 21–22 (1994). And, as here, the parties typically compromise *despite* an ongoing disagreement regarding whether and to what extent their past conduct was lawful. *See, e.g.*, Proposed Order at 4 (ePremium declining to admit liability or any of the allegations set forth by State National).

But a consent decree, unlike a dismissal, shifts the court's focus from past actions to future obligations. The basis for extending jurisdiction to that context is far less clear. By anticipating hypothetical future violations, consent decrees invite courts to exercise ongoing public supervision over a dispute that a private agreement has ended. Why doesn't this violate the general rule that courts lack authority to act after a case becomes moot? *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env'tl Services*, 528 U.S. 167, 192 (2000) (courts do not "retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, as when the parties have settled…."); *Moore v. Charlotte-Mecklenburg Bd. of Education*, 402 U.S. 47, 48 (1971) (If "both litigants desire precisely the same result," then "no case or controversy" persists.). To be sure, the custom of entering consent decrees is longstanding and familiar—repeatedly discussed, without apparent objection, by appellate courts. *See, e.g.*, *Benalcazar v. Genoa Township*, 1 F.4th 421, 425 (6th Cir. 2021) (citing *Local No. 93 Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) (citing *Swift & Co. v. United States,* 276 U.S. 311, 326 (1928))); James E. Pfander & Daniel D. Birk, *Article III Judicial Power, The Adverse-Party Requirement, and Non-Contentious Jurisdiction*, 124 YALE L.J. 1346, 1387 (2015) ("Although scholars have questioned the propriety of consent decrees under Article III … the [Supreme] Court's sanctioning of consent decrees remains undisturbed.").[1] But

---

[1] Litigants may even be able to return to the same court and reopen the same suit to resolve future disputes under a settlement agreement—a commonly cited benefit of consent

examples are not necessarily endorsements, and it's not easy to find caselaw reconciling consent-decree practice with case-or-controversy precedent.[2] Professor Morley described this as a "largely unrecognized challenge to Article III's justiciability requirements," which the "Supreme Court has never squarely addressed":

> When litigants have reached accord on all outstanding legal issues in a case, they may reduce their understanding to a legally binding settlement agreement. The fact that the litigants may desire the ability to enforce their agreement through contempt, rather than traditional breach-of-contract remedies, does not entitle them to judicial relief. When all parties to a dispute have reached complete agreement on the matter, a "case" or "controversy" ceases to exist, the court has no further role to play, and a resolution may be achieved through private ordering….
>
> It is one thing for federal courts to entertain non-contentious jurisdiction over uncontested ex parte matters where adverse litigants have not reached an agreement, and the court's involvement is necessary to effectuate some change in legal status or rights. It is quite another for the court to do so where such an affirmative, express agreement exists, and litigants simply want the court to place its imprimatur on their arrangement. By the time a dispute reaches that stage, any "case" or "controversy" has evaporated, and the parties are fully capable of adjusting their legal rights or status among themselves.

Michael T. Morley, *Non-Contentious Jurisdiction and Consent Decrees*, 19 U. PA. J. CONST. L. ONLINE 1, 12, 15 (2016). His point is well taken: this practice is not easy to reconcile with mootness precedent. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

Despite these questions, courts—including the Sixth Circuit—have held that district courts retain jurisdiction to enter consent decrees that satisfy three criteria that (curiously enough) are largely oriented to the dispute at the time of the parties' complaint rather than the court's action, *cf. Arizonans for Official English*, 520 U.S.

---

decrees—"if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal" under Fed. R. Civ. P. 41(a)(1)(ii) or 41(a)(2). *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378, 381–82 (1994).

[2] The dearth of caselaw is presumably correlated with the lack of an incentive for a *consenting* party to take an appeal.

4

at 67. Permissible consent decrees must "spring from and serve to resolve a dispute within the court's subject-matter jurisdiction," "come within the general scope of the case made by the pleadings," and "further the objective of the law upon which the complaint was based." *Benalcazar*, 1 F.4th at 425 (quoting *Local No. 93*, 478 U.S. at 525); *see also Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 872 (6th Cir. 2015). On that basis, "courts retain the inherent power to enforce"—and, by implication, enter as forward-looking orders—"agreements entered into in settlement of litigation pending before them." *United States v. Bd. of County Comm'rs of Hamilton County*, 937 F.3d 679, 688 (6th Cir. 2019) (quotation omitted); *see also Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994); Morley, *Consent of the Governed*, 16 U. Pa. J. Const. L. at 674 ("the most compelling argument … is the judiciary's largely unbroken historical practice of issuing [consent decrees].").

The proposed order submitted by State National and ePremiuim satisfies those prerequisites. This Court indisputably has jurisdiction over the underlying Lanham Act claims alleging fraudulent use of a trademark. *See* First Amended Intervenor Complaint ¶¶ 1–7, 90–128 (citing 15 U.S.C. § 1121). The proposed injunction ordering ePremium not to violate State National's trademarks "come[s] within the general scope of the case made by the pleadings." *Benalcazar*, 1 F.4th at 425. And protecting trademarks by enjoining their violation "further[s] the objective of the law upon which the complaint was based." *Id.*

**2. Injunctive Relief.** The remedial question is whether a court, once satisfied of its jurisdiction to act, should exercise that jurisdiction by entering an injunction. Ordinarily, injunctions are a form of equitable relief that courts use to prevent irreparable injuries for which there is no adequate remedy at law. *See eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The parties' proposed order doesn't set forth any ongoing or anticipated harm caused by ePremium, and doesn't explain why its prior alleged actions can't be addressed by relief short of an injunction. Their settlement agreement appears to mark the end of this dispute— apart from State National's request for "additional comfort" through a court-supervised injunction. Normally this would fall short of the standards for injunctive relief—a backstop utilized when nothing else will do. *See id.*

But whatever the requirements for a permanent injunction generally, Congress clearly authorized courts to order this forward-looking remedy in response to trademark infringement under the Lanham Act. District courts

> shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant…. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this

5

> subsection in the case of a motion for a permanent injunction….

15 U.S.C. § 1116(a). An injunction "is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Audi AG v. D'Amatoi*, 469 F.3d 534, 550–51 (6th Cir. 2006) (quotation omitted). After a court has entered judgment marking the boundaries of parties' rights in trademark, Congress has recognized a permanent injunction as the default (albeit not automatic) statutory remedy: "the usual and normal remedy once trademark infringement has been found in a final judgment." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:1 (5th ed. 2017); *see also eBay*, 547 U.S. at 395 (Roberts, C.J., concurring) ("From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This long tradition of equity practice is not surprising, given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes.") (quotation marks omitted). Future monetary relief are typically not deemed an "adequate" remedy for continuing injury to goodwill and reputation. *See* MCCARTHY § 30:1.[3]

In choosing whether to order an injunction in parallel with a private settlement, the "district court's inherent power is 'broad' and the 'court's choice of remedies is reviewed for an abuse of discretion.'" *Hamilton County*, 937 F.3d at 688 (citation omitted). But the Sixth Circuit has emphasized the need for district judges to exercise this discretion based on reasons consistent with public policy's general "presumption in favor of voluntary settlement of litigation." *Lexington-Fayette*, 591 F.3d at 490–91 (reversing and remanding decision not to approve consent decree that included a federal civil penalty for alleged environmental violations) (quotation omitted). To guide district-court discretion, the court of appeals set forth a list of factors a judge should consider in connection with a proposed consent decree. "The criteria to be applied when a district court decides whether to approve and enter a proposed consent decree[] are whether the decree is fair, adequate, and reasonable, as well as consistent with the public interest." *Id.* at 489 (quotation omitted); *see*

---

[3] *See, e.g.*, *McKeon Products v. Howard S. Leight & Assocs.*, 15 F.4th 736, 739 (6th Cir. 2021) (affirming consent decree and permanent injunction imposed to "minimize the likelihood of confusion concerning the parties' respective trademarks"); *N. Techs. Int'l Corp. v. SKS Indus.*, No. 1:02-cv-828, 2009 WL 10689367, at *1, *4 (N.D. Ohio Mar. 6, 2009) (enforcing consent decree enjoining trademark infringement); *Am. Girl, Inc. v. Hammer*, No. 3:04-cv-392, 2014 WL 3507339, at *1 (E.D. Tenn. July 14, 2014) ("Under the consent judgment, defendant was permanently enjoined from using any other mark which so resembles the American Girl Marks."); *Wilcox Assocs., Inc. v. Xspect Sols.*, No. 08-14695, 2009 WL 3059151, at *4 n.7 (E.D. Mich. Sept. 24, 2009) ("The case was originally settled when the parties entered into a Consent Judgment, whereby the defendant was permanently enjoined from manufacturing, distributing, or selling automobile accessory products bearing the plaintiff's trademarks….").

*Williams*, 720 F.2d at 922–23 (elaborating on considerations for district court prior to entry of consent decree).

Particularly given Congress' contemplation of injunctive relief in the trademark-infringement context, 15 U.S.C. § 1116(a); *cf. eBay*, 547 U.S. at 391, the requested injunction contemplated by the parties' consent decree appears to be fair, adequate, and reasonable, *Lexington-Fayette*, 591 F.3d at 489. It maps directly onto the claims made in the pleadings by enjoining any future ePremium misappropriation of State National's trademarks. *See* Proposed Consent Decree (DN 130-1) at 5–6. State National may avoid continued violations of its trademarks, while ePremium may avoid the costs of litigation and trial, which could result in the same relief the parties achieve more swiftly and efficiently today. *See United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). And the ordered relief here is in the public interest because it enjoins further alleged violations of trademark law and protects the integrity of the insurance system by preventing ongoing fraudulent insurance sales. *See Williams*, 720 F.2d at 920–23; *Audi*, 469 F.3d at 550–51.

\*\*\*

Despite the uneasy relationship between consent decrees and federal courts' limited Article III jurisdiction, the law of this circuit and the Lanham Act authorize and—on this Court's reading, at least—effectively compel approval of the parties' proposed resolution, which satisfies the requirements articulated in this Circuit's precedents. The Court therefore adopts and enters the proposed order (DN 130-1).

## ORDER

1. This Consent Order is entered as part of a settlement between State National and ePremium that will fully and finally resolve the disputes between State National and ePremium in this lawsuit.

2. ePremium, its affiliates, agents, employees, officers, attorneys, successors, assigns and all persons in active concert or participation with any of them shall not represent to anyone that State National issued any insurance policies or insurance certificates, or is responsible for any loss, with respect to the Madera Program, Gagliardi Program, Royal Waste Program, Triangle Program, Iron Woman Program, Omega Program and ePremium Program.

3. ePremium, its affiliates, agents, employees, officers, attorneys acting in their capacity as counsel to ePremium, successors, assigns and all persons in active concert or participation with any of them shall not issue any additional insurance policies or certificates bearing the State National name, without State National's written consent obtained directly from an executive officer of State National.

4. ePremium, its affiliates, agents, employees, officers, attorneys acting in their capacity as counsel to ePremium, successors, assigns and all persons in active concert or participation with any of them shall not use in any manner State National's name in offering for sale, selling, distributing or advertising any and all goods or services,

including, but not limited to, all insurance products, insurance policies, certificates of insurance, insurance forms or any other documents purporting to evidence insurance using State National's name, without State National's written consent obtained directly from an executive officer of State National.

      5. For the avoidance of doubt, as used herein, the term "affiliates" shall not include portfolio companies unrelated to ePremium or any professional investors, hedge funds, venture capital funds, private equity funds or similar institutional investors that are a direct or indirect equity holder of ePremium.

**Further:**

      1. The claims against ePremium are dismissed with prejudice;

      2. The cross claims asserted by ePremium against Ambassador Captive Solutions and Brandon White are dismissed without prejudice;

      3. Each party is responsible for its own costs and expenses; and

      4. Except as to State National and ePremium claims, no other claims are affected by this Order.

Benjamin Beaton, District Judge
United States District Court

December 9, 2021